Error argument in WR Grace. Error argument in WR Grace. May it please the court. My name is Christopher Landau and I represent the debtor appellant WR Grace. I'm here today with Mr. Frank Monaco who also who represents the state of Montana which also has filed an appeal in this case. We've divided our time to give me ten minutes, Mr. Monaco five minutes, and then I'd like to reserve five minutes for rebuttal. Granted. Thank you. This court decided the issue presented here five years ago in Girard which also arose out of the Grace bankruptcy and in fact involved the very same adversary proceeding and the very same injunction. The lesson of Girard is simple. A bankruptcy court clearly has subject matter jurisdiction over a motion filed by the debtor in its own bankruptcy proceeding. Let me ask a question if I may, Mr. Landau. You say this is the same question. In Girard we were dealing with a named insurer. Here we're dealing with the sovereign state of Montana not named in any previous injunction. How is this controlled by Girard? I understand there's some broad language in Girard but is this really exactly the same question that was faced in Girard? With respect, Your Honor, I'd say yes because I think the key insight of Girard is that the subject matter jurisdiction issue is answered with respect to the bankruptcy court subject matter jurisdiction over the adversary proceeding in bankruptcy. I think the point of Girard is you don't have to worry about there's two different proceedings. There's the bankruptcy proceeding and there's the proceeding in Montana and whereas the related to jurisdictional analysis may be different for the reasons that you suggest, Your Honor, over someone like an insurance company, the point of Girard is not that Girard satisfied the related to jurisdictional analysis. The point of Girard is that you don't get into the related to jurisdictional analysis. Mr. Landau, are you saying that Girard is the law of the case? Are you saying it's persuasive? What are you saying? Well, we're saying both, Your Honor. We're saying it clearly... Are you saying it's the law of the case? Your Honor, yes. We think it's the mandate rule in the law of the case doctrine. We do think it's applicable. To be honest with you, the law, our view was that the law of the case issues, given that this is bankruptcy and it's not your traditional Jones versus Smith kind of binary case where it's kind of easy to identify the same case when it's going up and down, we actually thought that the merits issue was somewhat easier in this case than the law of the case issue, which is why we put the merits issue first. So we think you can decide this case on either ground. The merits issue, in my view, is easy, but you have to arguendo, arguably, have jurisdiction first. Correct, Your Honor, and so... But Judge Jordan's question. In Girard, we had already entered an injunction in favor of MCC and and the debtor. Correct. Here, there was an injunction in place. There was, in our case here, you're looking for a new injunction against a new party. Correct? Yes, Your Honor. Well, you're seeking to expand the same injunction, but that's a metaphysical... Girard made it very clear that that's a different situation. Well, but again, Your Honor, I think that the subject matter jurisdiction inquiry is solved by the fact that the bankruptcy court has subject matter jurisdiction over the adversary proceeding in which the injunction is either sought to be expanded or limited. You are walking into the bankruptcy court. But we're not dealing with a modification. We're dealing with a new injunction that's being sought. No, Your Honor, with respect, it's actually the same injunction that they're seeking to expand. Well, it is not. Aren't you saying that we, aren't you saying that the bankruptcy court and the district court both looked at the wrong proceeding? Precisely. Okay, that in examining subject matter jurisdiction, they should examine the adversary proceeding, not the Montana proceeding. That's our argument in a nutshell. Okay, how do you get around Celotex? Well, Your Honor, the cases that they relied on, which were primarily federal mogul, paid for, all those cases, and Celotex, I don't even know that anybody relied on that. No, you didn't cite Celotex and your opposition didn't cite Celotex, but Celotex was decided by the U.S. Supreme Court and made it clear that you at least have to have related to jurisdiction. Well, you clearly do, Your Honor. I mean, there's no, you at least have to have. But you're looking at the adversary proceeding. Correct. You're not looking at the Montana. Correct. There is no question that 105 is not an independent grant of jurisdiction. So you definitely need the 1334 jurisdiction, which is arising under or related to. And what this Court said in Girard, and which seems quite clear, is that the adversary proceeding filed by the debtor satisfies that. So you have federal jurisdiction under 1334b in the adversary proceeding. But the Court did not say that in Girard. Your Honor, with respect, it said the jurisdictional issue was a non-issue. That's right. He didn't say anything. Because it was an injunction that was in place. I'm trying to get to your reasoning. Where's the outer bound on that? Your reasoning seems to be, because it was a motion brought in the bankruptcy proceeding, it's related to an arising under. Under that reasoning, couldn't you bring any motion to enjoin anything in the United States of America? And as long as you brought it in the adversary proceeding, or in the bankruptcy court, say, hey, we're in the bankruptcy proceeding, therefore it's arising under. Your Honor, and it's an excellent question, but the point is that there may be no merit to the motion. But the bankruptcy court, sitting in the adversary proceeding in bankruptcy, has subject matter jurisdiction. You are in the right courtroom. The question is whether or not the Court has the substantive power under Section 105 to grant you any relief. You could come in and file a motion that, you know, to enjoin Martians for invading the earth. Maybe that's a completely frivolous and ridiculous substantive motion, but the point is... No, it's not that far afield from this, because the Montana actions are all about an independent duty on the part of the state of Montana to warn about public health risks, right? Your Honor... Yes or no? Yes, Your Honor. But as the bankruptcy court herself recognized, the bankruptcy judge herself recognized, she said she suspects this is yet another attempt at an end run around the automatic stay. That you are correct, that there is an independent legal duty that they have alleged against the state of Montana. How do you get around PAYCOR and Federal Mogul then? Because, Your Honor, those really did raise a subject matter jurisdiction question. Those were cases... The Montana actions will have absolutely no impact on the debtors' estate without a further adjudication. But, Your Honor, now you are getting into the merits of the related to issue. The point... Go back to PAYCOR and Federal Mogul, just the way Judge Berry asked you to. Why wouldn't the argument you're making here be just as valid if it were a good one? You know, say, for the sake of discussion, we were to agree with you, then wouldn't we have to say that PAYCOR and Federal Mogul were wrong because they were... Those things were being discussed and brought up in the bankruptcy court, so the bankruptcy court had subject matter jurisdiction. No, Your Honor, because there was a removal situation. The third-party debtors, the equivalent of Montana in those cases, was trying to remove those cases for the adjudicatory authority over those cases. They wanted to bring it in in Federal Mogul for a Daubert hearing, so it was the big three, Ford, GM, and Chrysler filed a motion. They tried to remove those cases from state court to the bankruptcy court. All that is happening here is that the debtor has gone in to the bankruptcy court and says, please and joins, just stop in its tracks, the Montana action. Nobody's asking the court to bring in the Montana action into the bankruptcy court. That's the key point, Your Honor. How do you deal with combustion engineering, then? Combustion engineering where absolutely it was being raised in that case, not a removal case, and the court said the equitable powers authorized by Section 105 are not without limitations. The Courts of Incautions Section does not authorize bankruptcy courts to create substantive rights. Importantly, it does not give the court power to create substantive rights, otherwise unavailable under the Code. In other words, I take it to mean you've got to have some jurisdiction. 105 doesn't let you bootstrap it in. It doesn't let you create new rights. You've got to have some jurisdiction. Correct, Your Honor. There's no question you have to have some jurisdiction. There is jurisdiction here under 1334 because it is an adversary proceeding in the bankruptcy proceeding initiated by Grace. Grace is just saying, I'm showing up here in my adversary proceeding, and I'm trying to enjoin that. I think the key point, Your Honor, is a federal court does not need to exercise subject matter jurisdiction over a state court proceeding to enjoin it. That just stops it in its tracks. That's why federal courts have the authority to enjoin state criminal proceedings, state administrative proceedings, over which they could not independently exercise subject matter jurisdiction. What happened in combustion engineering is distinguishable because in combustion engineering, even though the word injunction is the same, I think it gives rise to a semantic problem. That was a channeling injunction under Section 524, which meant that the state court action was being sucked into the bankruptcy. It was then being extinguished in the bankruptcy, and you were getting a claim. That is entirely different than the kind of injunction we're talking about here, which is a stop in your tracks state court injunction. The bankruptcy court is not exercising adjudicatory authority over the state court action. It is temporarily stopping that action to give the itself and the debtor breathing room while the reorganization is going on. Let me just, your time is running. I want to make sure you can say everything you might want to say. Let's assume, for purposes of argument, that 1334B jurisdiction is either present or is not necessary. It's not a necessary prerequisite. A 105A injunction, staying a state action, is appropriate only in unusual circumstances, quote unquote. We have defined unusual circumstances to be such an identity between the debtor and the third party defendant that the debtor may be said to be the real party in interest. Now, how can that be said when you've got the, here we are back in PAYCORP? No, Your Honor, again, because the bankruptcy court here, of course, did not consider this issue. The bankruptcy court went on. Didn't go to the merits. Did not consider the merits of the 105 injunction. I'm asking you for a moment to talk about the merits. Okay, the bankruptcy. You have to show unusual circumstances and each of the four prongs that are required for a preliminary injunction or an injunction to issue, correct? And the likelihood of success, though, under 105. I'm not talking about that. I'm talking about the unusual circumstances. No, but that is one of the factors. If Grace and the state of Montana are in such, have such an identity of interest, that one is in effect the other. But, Your Honor, just with respect, the likelihood of success in the, looking to the merits of the 105 factors, typically one of the factors for a preliminary injunction is likelihood of success on the merits. The relevant likelihood of success on the merits in the 105 context is a likelihood of a successful reorganization. It's not the likelihood of getting a permanent injunction. That's after you've shown the unusual circumstances. Then you go to the next prong. But I think what the bankruptcy, what we would ask you to do, Your Honor, is allow the bankruptcy court to address this in the first instance. Because the bankruptcy court perceived that for all intents and purposes, this action against Montana is an action against Grace by proxy. Even though they have identified an independent legal duty by the state. I would agree, I don't know how you can disagree, that assuming a jury were to find in, against the state of Montana, there has to be another adjudication to hold Grace in. With respect, Your Honor, what you're saying sounds like the related to inquiry about a second lawsuit. The 105 inquiry is less demanding than that. The 105 inquiry will, will track in many respects, it's a separate analysis, but there is a, there is certainly a, the same questions being asked. There can be some overlap, Your Honor. Yes, and one of the overlaps is an identity of interest. But, but Your Honor, if you look at the way that the Gerrard Court discussed the 105 and the Gerrard Court affirmed the bankruptcy court's issuance of a 105 injunction, by reference to such things. In the case over which there was jurisdiction. And there has to be jurisdiction here, too. We can see, but again, the question is what proceeding is there jurisdiction over? Gerrard says, as long as it's jurisdiction over the adversary proceeding in bankruptcy. So we can go out and get that man or woman on the moon and just enjoin him or her to. No, but what you have to show, but Your Honor, with respect, what you have to show. What you're saying, no. Because what you have, what you have to show, and what I think the bankruptcy court perceives here, and she should get the first bite of this apple to decide whether or not. Well, you're on the merits now. I'm on the, I thought you were taking me to the merits. I was taking you there just to go back, to show that just even on the merits, there has to be a relation. Well. It has to be related. But the related to incurring the merits is under 105, can be things like witness taint. I think what the, what the bankruptcy court has perceived here is that basically this is a lawsuit against grace. To prove the lawsuit against Montana, you really have to prove liability against grace. Because the, the theory against. How is that part, no, no, how. Because Your Honor, the, the. No, no, the lawsuit against Montana, is it, it's a duty to warn case. Correct. Against Montana. But I, but the point is, you would essentially, I, I, again, I mean, as a practical matter, not as a strict legal matter, because you are right, it's an independent lawsuit as a strict legal matter. So then you're into pay court. But, but no, but, but the point is that it would have witness taint. You would basically be getting the grace. You'd be saying, Montana, you didn't warn me, because there was this horribly dangerous situation that grace created. And, and therefore, you'd basically be bringing in grace witnesses. You'd be distracting grace. And the, the bankruptcy court, which understands the, the limitations on grace, should be decide, allowed to decide the merits of the 105 issue. The bankruptcy court didn't get there, because she went off on this threshold jurisdiction. Yeah, but the bottom line for you is, as long as it's a 105 injunction question, there's no ever, ever going to be an issue of subject matter jurisdiction. Because by definition, it's in the case because you brought the. Well, at least when it is the debtor walking into an adversary proceeding that the debtor has brought in the bankruptcy. If a, if a third party. I just want to know if that's your, your position is, in a 105 injunction case, there's no limit to the jurisdiction, because by your lights, by definition, you're in the bankruptcy case already, so you could, in Judge Berry's phrase, be enjoining people on Mars. That's okay, because you're in the bankruptcy court. Ergo, subject matter jurisdiction exists, no mat, no matter where you're trying to reach. Your Honor, when, when you walk into the bankruptcy court, and you say, please enjoin this under 105, the bankruptcy court has subject matter jurisdiction. That's a yes. Not necessarily any power over the merits. We'll get you back on rebuttal. Thank you, Your Honor. Mr. Monaco. Good afternoon, Your Honors. May it please the Court, my name is Frank Monaco, and I represent the state of Montana. Mr. Monaco, the cases against the state of Montana, I gather, are moving ahead. The district court denied a stay, and I, we denied a stay, correct? That is correct, Your Honor, but it is my understanding from my co-counsel in Montana that they are not presently moving forward, but they could. But they could if they, if they wanted to. Exit, that is correct. Define they, I won't. Yes, yes, they could move forward at any time. They are, I believe that they are in various stages of initial discovery and, but none are scheduled for trial. I'll try to avoid going over the same ground that Mr. Landau did, but I would like to emphasize a few points in our argument. First of all, I'd like to address the district court opinion. And as a preliminary matter, I would note that while these principles of law are often not, not too difficult to state in connection with 28, 11 U.S. 28 U.S.C. Section 1334 and 11 U.S.C. 105 are often difficult to apply in practice as the various cases have shown. With respect to the district court opinion, the district court seems to try to distinguish, Your Honor, on the basis that the Libby claimants sought to cut down on its extent, whereas in this situation, we are, State of Montana is being added as a party. I don't think that that procedural nicety should determine the question of whether or not there is subject matter jurisdiction. Is that just a procedural nicety, where you have an existing injunction with a named beneficiary of that injunction? And here you have what, it certainly, I don't want to speak for anybody else, but it looks to me like wholly other. It's not a, not an insurer. I mean, certainly Montana fought like it should have in the state courts in Montana to say, we don't have any duty here. There's no duty to warrant. So they didn't think they had any duty. Very different than somebody who's contractually got a duty to indemnify, which is saying. Well, Your Honor, a couple points. First of all, the Girard case, I do not believe, turned on the question of whether or not MCC was an insurer. It had more to do with the fact that they were sued for an independent duty of failure to warrant, which is very similar to the cause of action brought against Michael. No, no, no, it had to do with MCC already being subject to an injunction. That is correct, Your Honor. But I think what the district court was suggesting, that had Montana been named originally as a defendant, then that would have been okay. And I don't see how subject matter jurisdiction can turn on that type of, as I said previously, procedural nicety. Both parties were attempting to modify the injunction. Well, but one party was already covered by the injunction. I mean, that doesn't strike you as a distinction with a difference? No, Your Honor, because both parties were attempting to modify the injunction. Had Montana been named originally as a party to the action, then the district court seems to suggest that would not have been a distinguishing factor. Let me ask you if you have any response to the question I tried to ask, but maybe not very effectively, to Mr. Landau about Section 105. Our precedential opinion in combustion engineering, which incidentally post-dates the Girard decision, which is an NPL. Our precedential opinion in combustion engineering says, in pretty clear language, that 105, quote, does not provide an independent source of federal subject matter jurisdiction. And then goes through a related to analysis. If it's in fact the case that you got a 105 injunction, that ergo you've got subject matter jurisdiction the way your colleague has argued it. What are we to make of combustion engineering, which appears to say the opposite? Your Honor, I think Girard and combustion engineering can be harmonized. They're two very, very different cases and two very different legal analysis. In combustion engineering, this court looked at whether the injunctive protections of Section 524G could be extended to non-debtor affiliates. I understand that, but we're dealing here with a very broad assertion by Grace and presumably by Montana, you can correct me if I'm wrong, that once you're talking about a 105 injunction and you're going into the bankruptcy court to talk about that, that because you're in the bankruptcy court talking about the injunction, you've got subject matter jurisdiction. That's not the way this court dealt with it in combustion engineering. In combustion engineering, it said in a very lengthy opinion, hey, 105 is not a basis of subject matter jurisdiction. You've got to look someplace else for it. We're going to look for related to jurisdiction and there's a related to analysis. Well, again, in combustion engineering, if you're able to get a 524G trust, it is a post-confirmation permanent injunction. Here, we're talking about a temporary injunction that would be issued and would What would the difference be for purposes of jurisdiction? Well, you would need jurisdiction over the preliminary injunction to get a permanent. Well, Your Honor, I think one critical difference is that what we're asking this bankruptcy court to somehow take jurisdiction over. You're saying we really don't want the bankruptcy court to do very much, just a little something, just to stay this till the reorganization is over. But that's not really an injunction. That's just a stay. But that's a distinction without any difference for purposes of our jurisdiction. Well, I think it is important, Your Honor, because you're not, with the 524G trust, you're saying for all time, you are barred from taking any action against that particular entity. So you distinguish Federal, Mogul, and Pay Corps because, as your colleague said, well, those are removal cases and that's different. And you distinguish combustion engineering because you say, well, sure, that's an injunction case, but it's a different kind of injunction. Do you have any positive law for your position that we should be making the kinds of distinctions that you're asking us to make and say, yeah, yeah, related to jurisdiction, you've got to have that for removal. Related to jurisdiction, you've got to have that for a 524G injunction. But you don't have to really worry about that for every other kind of 105 injunction. Well, Your Honor, the typical, let me try to put it in this context. A lot of the 105 injunctions give you a typical situation. Principle of a small Chapter 11 debtor guarantees a loan. The bank goes after that principle in a state court action. The debtor brings a 105 injunction to preclude the bank from going after that principle. I'm not aware of any cases that say that the bankruptcy court doesn't have subject matter jurisdiction to preclude the bank from going after that principle. I don't see any difference in this situation analytically. So, I think the bankruptcy court has the inherent and equitable power, and I think courts have, higher courts have recognized this, to do whatever it takes to protect the administration of the estate. It's not to say that you still don't have to go through the analysis of the exceptional or unusual circumstances that Judge Barry mentioned. Whether it's analyzed or not in all those cases, doesn't the statute make it clear that they at least have to find that the case is related to the bankruptcy action? Well, I think that there is some related to jurisdiction analysis. Some of that may be assumed and not contested in those actions, and isn't that the basic problem you have here? Is that, you know, you don't want us to look at subject matter jurisdiction, but since we're looking at it, we have to determine whether it's at least related to, and the bankruptcy court concluded that this was not related to the bankruptcy. Well, Your Honor, something else that the court should recognize, and maybe this will help in terms of understanding where we're coming from. The Libby claimants are no strangers to this action, to this bankruptcy case or this action. They're named defendants, and they have participated throughout this case from beginning to end. They are, were both involved in the confirmation process. So I don't know that sort of the man on the moon type of situation is quite the same as what we have here. They've participated in this bankruptcy. Their party's interest, they filed proofs of claim. They subjected themselves to the jurisdiction of the court, and I don't. We're not talking about the Libby claimants. We're talking about the state of Montana. But Your Honor, at the end of the day, that's who's being enjoined. It's not, it's the bankruptcy court is telling the Libby claimants, you cannot bring this action. That's effectively what Grace has asked the bankruptcy court to do. And I think that's a very, very important distinction. And that, I think, goes to your question about what's the analysis when it's a 105 situation? Well, we'll hear from Mr. Cohn now. You're well over your time. Thank you, Your Honor. Thank you, Mr. Meyers. May it please the court. My name is Daniel Cohn. I represent the Libby claimants who have claims, who are asserting claims against the state of Montana. There are about 950 people in Libby whom we represent in the W.R. Grace bankruptcy. And those for whom I speak today are those who are asserting claims against the state of Montana. Your questions really hit upon what is the flaw in this truly radical position that's being advanced on behalf of the debtor and the state of Montana. And that is that we have been able to locate no precedent which says that in the federal court system, which is a system of limited jurisdiction, that the mere filing of a piece of paper, the mere filing of a piece of paper asking for relief suffices to establish the court's jurisdiction to grant that relief. In federal court, you always have to start off with the question of your own jurisdiction. Now, in this case, we have a jurisdictional scheme under Section 1334B, which says you get jurisdiction in one of three ways. The case either has to arise under the Bankruptcy Code, it has to arise in a bankruptcy proceeding, or it has to be related to a bankruptcy proceeding. And you could say- Your opponents have taken the position, Mr. Cohn, that this is in the bankruptcy proceeding because that's where they filed for their relief. It's just to modify an existing injunction. And that's what Girard was all about. And Girard said they could do it. And therefore, they can do it. How do you respond to this specific Girard argument? If it sufficed, if it sufficed, if filing the paper in the bankruptcy sufficed, and naming Section 105 of the Bankruptcy Code, sufficed to meet the jurisdictional standard of arising under the Bankruptcy Code, because you said it was Section 105, and it arises in a bankruptcy case because you filed the paper in the bankruptcy case, then what you would have done is you would have completely eliminated that whole line of cases, including this Court's decision in Combustion Engineering, which say that Section 105 does not, does not establish the jurisdiction of the Court, but you need an independent basis for jurisdiction. We have a whole extended jurisprudence. And it's- by the way, it's not just the Third Circuit. We cited numerous cases in our brief for that proposition. And if I heard Mr. Landau correctly, he agreed that Section 105 does not establish the jurisdiction of the Court. So you're left- the problem with their position is it leaves you with absolutely no- with absolutely, you know, an automatic blank check jurisdiction, and it ignores the principle that the courts have worked so hard to craft that limits the bankruptcy court's jurisdiction. And so where you're left is that when you go and you seek an injunction, you have to meet the prerequisites for- related to jurisdiction. And as it happens, this- What do you make of Girard then? I mean, there's- it's- you can say it's dicta, but it says what it says. How is- how do we square the language of Girard with what you're saying? Your Honor, you can square it by focusing on the procedural distinction, which I believe your questions- your questions went to, which is that in that case, unfortunately, the Libby claims dropped the ball in the sense that this is before my time, so I can speak freely about this, but what happened was in the very first days of the bankruptcy case, this injunction was entered, and the injunction did, by its terms, protect insurers, such as Maryland Casualty. And so the Libby claims did not respond at that time, and by the time we did respond, we were in the procedural position of needing to overturn an injunction that had already been entered. That is a different inquiry, and Girard suggested it's a different inquiry from the inquiry that you would have if an injunction were being sought in the first instance. If, on the other hand, you read Girard, and I would have to acknowledge that the case is not a model of clarity on this. If you read Girard as going beyond that, as saying there is no jurisdictional issue, even when a brand new injunction is being sought, then I would respectfully submit that Girard is just wrong and is superseded by combustion engineering, which made it clear that when you are seeking to enjoin litigation among third parties, the related to jurisdictional inquiry is whether you have jurisdiction over that third party litigation. It is not simply do you have jurisdiction over the adversary proceeding in the bankruptcy case in which the injunction is sought. And combustion engineering trumps Girard, of course, because it's later decided. It's precedential. You can tell the sweat and tears that went into that decision just from reading it. It is a masterwork of judicial craftsmanship. It is one that has been cited favorably. It builds on the circuit's prior jurisprudence in the Paycourt case and in the federal mogul. And against that series of cases cited by other circuits relied upon by the Supreme Court, against that backdrop, Girard would just stand out as an anomaly, as just a case that went off in its own direction, perhaps because of the odd procedural posture. I would point out that, though perhaps I'm saying more than needs to be said, that if it were the law, let's say that we were writing on a blank slate and that you were free to decide that there should be no jurisdictional inquiry when a debtor goes into the bankruptcy court seeking an injunction, that would be just a terrible rule to announce. And the reason for that is that our entire system of appellate review relies upon, among other things, a jurisdiction, which is an issue of law. The appellate courts very closely police the jurisdiction of the district courts and the bankruptcy courts. And if the standard were simply, well, was the injunction properly entered and you skip the jurisdictional inquiry, then you're talking about an abuse of discretion standard. Bankruptcy courts will run wild, issuing injunctions all over the place. And there'll be very little control, very little of the discipline that our judicial system relies upon to make sure that people's very important rights do not get violated. And let's make no mistake about it. We are talking about very fundamental rights here. This is the right of a group of claimants who are sick and dying to obtain justice from somebody. We acknowledge the automatic stay bars us for the moment from seeking any justice against grace. But we have these independent claims against the state of Montana. We had to go all the way, we had to fight our way up to the Supreme Court of Montana in order to establish those rights. We should be permitted to pursue them. Well, your opponents would say, and I think Mr. Landau started to say here when we were nibbling around the edges of the merits, that the only way to get to the state of Montana is really to establish liability on behalf of grace. That's their argument. And that therefore, this is, I don't want to speak to them. I take it their position is this is a backdoor attempt to get around the automatic stay, to make grace defend itself in your suits against Montana. And that therefore, it's a real detriment to the administration of the bankruptcy estate. What's your response to that? Well, to put this in perspective, grace has filed a Chapter 11 plan, a Chapter 11 plan in the style of the typical Chapter 11 plan in an asbestos case. Channels would channel our claim against grace to a trust. And under the terms of those arrangements, there is no, there will be no contest about liability. Essentially, what the plan provides is that if we show that we were exposed to grace asbestos and we show a level of disease, then we receive compensation that is tied to the particular disease level. That's the way the plan is set up. There is no issue of grace liability. Grace is, I won't say admitting liability, but functionally it is, it is through this trust, it is accepting liability for all those who can establish that they were exposed to grace asbestos. For the people of Libby. You're saying that your suits against Montana go forward and there's all, I mean, all the evidence, since this is just a duty warrant case, all the evidence about exposure and how they were exposed, that's all going to be about what grace did, right? Your, your position is that that doesn't put any burden on the debtor to have to go in to lawsuits in which Montana is the defendant, but grace's actions are at issue. It does not. And there are other reasons as well, Your Honor. Um, this case, uh, does not involve any witnesses who are current employees of grace. The, um, the testimony is established, uh, through, uh, primarily, frankly, through the plant manager out of grace who died some years ago, but before he died, gave a deposition that outlined everything that grace had done out there. And it's a very, it's a very, uh, it's a, it's a, it's a, it's a very damning kind of testimony. Doesn't your, doesn't the fact that you've alluded to the trust that's set up to determine, uh, these various claims really cut against the jurisdictional argument here? Because, because in effect, uh, if you say they at least haven't admitted liability, but they've accepted liability, isn't that almost very close to, uh, agreeing to indemnify the state of Montana and any others, uh, who might be found liable as a result of grace's conduct? And if that's the case, doesn't that make this case a related to case? Uh, no, no, Your Honor, because the entire, um, the entire insight of PACOR and Federal Mogul, uh, is that there would need to be a separate adjudication of whatever the liability is. And, uh, that, the legal issue of whether the state of Montana is entitled to, uh, indemnity or maybe it's a common law contribution or, uh, whatever the doctrine is that's pursued, uh, is one where the, the trust's right to defend that is, is preserved. And, uh, uh, and I would not expect that the trust would simply automatically, uh, agree that grace had a liability by way of contribution or indemnity to the state of Montana. Remember, there's no contract of indemnity here. There's no, uh, the, the state's duties are independent duties to warn. There's no reason why, uh, just as a matter of logic or common sense, why you would say that because the state failed to warn, that was grace's fault. Uh, yes, grace generated the asbestos. Yes, grace generated the workplace hazard. But, uh, but the, the grace didn't owe any duty to the state to make sure the state performed its duty to, to warn the Libby claimants. So that could turn out to be a very interesting issue. You might, you might get it someday. Another, another chapter. Uh, you know, but, but if you do, if you do, what it will illustrate is the very point that I'm trying to make here, which is that there will need to be another adjudication and that adjudication will, uh, will not by any means be a, be a, be a lay down, uh, on either side's part, I would expect. Um, the, um, one, uh, one thing that, that was, uh, said by both, uh, Mr. Landau and Mr. Monaco, which was disturbing, uh, is the, uh, idea that this is the same, uh, injunction. Um, here, uh, here there was an injunction that was obtained, but it had nothing to do with the state of Montana. Uh, the fact that the debtor wanted to save itself, and he did save itself, the filing fee for bringing a new adversary proceeding that, uh, would extend, that would, that would obtain an injunction, uh, against the litigation between the Libby claimants and the state of Montana. Uh, that does not change the fact that this is a brand new injunction. There is nothing in the terms of the injunction as it existed before Grace filed this motion, uh, relating to the Montana litigation. Nothing whatsoever in the terms of that injunction that could possibly be construed to, uh, have applied to the litigation between the Libby claimants and the state of Montana. Brand new injunction, and therefore, uh, we, we, uh, we are in the, in the procedural posture where, whereby, uh, we are, we're contesting it at a time when, uh, even if Gerard stands for a different proposition where an injunction is already in place, uh, we, we have our full right to, to contest it, including on the basis of jurisdiction. Uh, and I would like to, um, to, um, address one other, um, uh, question that you had, which was about the cases moving forward, uh, in Montana. Um, we have tried to get trial dates out in Montana, and, um, the courts out there, as is the case with lots of, uh, trial courts, you know, see the word bankruptcy and, uh, get a little bit skittish, and, uh, they are, quite frankly, it's our understanding, waiting for this court's decision, uh, so that they will know whether, uh, they are permitted to move forward on a basis where their, an injunction will not be reimposed. So, um, so, uh, and, and that, that's the. There will be no excuse for waiting, right? Well, yes. Well, exactly. Because we denied a stay. We understand, Your Honor, but there was a stay that was imposed by the bankruptcy court, and, um, we've just, frankly, not been able to get the Montana courts to recognize that now that a stay is no longer in effect, um, that they should get moving. Um, there is, I understand, a mediation that's, uh, being scheduled out there, but apart from that, Your Honor, I think we're, we're, we're, we're stalled right now, and would accordingly, um, respectfully request that this court, um, render its decision, um, on as timely a basis as, as possible. Um, I guess, um, you would say that if we were to find jurisdiction, or if we were to find that jurisdiction, uh, related to jurisdiction is not a prerequisite, would you argue that we should decide the 105 issue as a matter of law? Uh, yes. As opposed to remanding to the, to the bankruptcy court? Uh, yes, Your Honor, and there are at least, there are at least two reasons for that. One is the one that you just, that you just hit upon, which is, uh, how can you say that there is an identity of interest between two parties whose interests are diametrically opposed? Uh, the, uh, these, these, these are not, this is not the classic, uh, identity of interest situation where, for example, you have employee, master and servant, where, you know, the servant's actions are going to be imputed to the, to his employer. Uh, this is not a situation of insurer, of an insurer, where the insurer is going to have to pay if the debtor is liable. This is the opposite. This is a situation where you have two parties, each of which is likely, when push comes to shove, to be pointing the finger at each other. Uh, there is the opposite of an identity, um, of interest. Uh, the other thing, Your Honor, is that as a matter of law, you, you, you could and should rule that, uh, the balance of harms, uh, favors, so, so, so heavily favors the Libby claimants, that an injunction could not possibly issue here. It's taken a long time to get to this point. It has taken a huge amount of time and, Your Honor, the facts are all there, laid out in the brief, not contested by Grace, that there are no Grace witnesses that are, that are involved in this. All that would be required at most would be some production of documents by Grace, on Grace's part. Grace has a document repository all set up in Boston, which produces papers for litigation all the time. There is simply no burden on Grace. Remember, the justification for receiving a preliminary injunction, supposedly, is to let Grace concentrate on the Chapter 11 reorganization. Well, in this case, there simply would be no burden. And so when you, when you, when you measure the non-burden against Grace, on the one hand, against the suffering, the ongoing, uh, suffering of the people of Libby, Montana, I would respectfully suggest that, uh, the balance of harms must weigh in favor of the Libby claimants. An injunction, an injunction would be erroneous as a matter of law if it were to be issued. And this Court can, can really cut through all that and just say, in the alternative, that, that even if there were, uh, jurisdiction, that, um, an injunction would be improper. If there are no further questions. Thank you, Your Honor. I can make three quick points. First, we are emphatically not saying that you don't need to look at jurisdiction for the 105 Inquiry. What we are saying is that there is jurisdiction under 1334B, and there's a rising under jurisdiction in the adversary proceeding. And that leads to the question that Judge Jordan has asked. And I apologize, Your Honor, if I didn't satisfy you the last time with my answer. Let me give it another shot if I could. The, the reason that this is different than combustion engineering is because it, it depends on what relief you are requesting. If you walk into the adversary proceeding in bankruptcy and you say, okay, just stop that state court proceeding in its tracks. Just enjoin that. You do, a federal court does not need to exercise subject matter jurisdiction separately and independently over a state court action to enjoin it in its tracks. Mr., Mr. Cohn talks about radical. That would be radical for this court to say. That's the whole assumption of his position, is that in order to exert, to, to issue the injunction, you need subject matter jurisdiction not only over the bankruptcy proceeding, but also over the underlying state court action. Well, maybe, I might have misunderstood him, but I, I, I took his argument to be that you had to have, not that what you just said, but that you had to have some jurisdiction that you could say was arising under, rising in, or related to, and that it couldn't be arising in or under, under these circumstances. Otherwise, you'd have no outward bound at all on this. So you have to look at related to jurisdiction, and if you look at related to jurisdiction the way this court did in combustion engineering, the, the effort here comes up short. No, no. That's the arc of the argument as I understood it, but, but tell me if I got it. No, no, I think what, what I'm saying, Your Honor, is that you do not have to, when you are simply trying to stop the state court action in its tracks, this happens, let's say you, you have a state criminal proceeding and somebody comes in the federal courts says that interferes with my federal right to free speech. Please enjoin that. The federal court does not need to exercise juris, federal subject matter jurisdiction over the state court action. In the proceeding over which the federal court already has jurisdiction, that is a question of the federal court's remedial power. Perhaps it's barred by the Anti-Injunction Act, whatever, but that's not a question. Just a second, Your Honor, because this is a very, this is, this is like, to me, if not the key point, certainly a key point. Absolutely. I think maybe there's still some talking past each other going on, so I want to make sure I understand you and you understand my question. The argument I, I perceive being made by the Liddy claimants is this, not that we would have to exercise jurisdiction in the sense of having subject matter jurisdiction over state court action in Montana, but that we must, or the bankruptcy court in the first instance, must be able to say those state court actions are related to what's going on in this bankruptcy. It's not enough to say as, at least the way they characterize your argument, it's not enough to, for Grace and for Montana to say, hey, we filed this request for injunction in the bankruptcy court. So it's arising in the bankruptcy court, because that would make the, the exceptions to the rule of the, it would just knock down all the fences, because by definition, every time you did something in the bankruptcy court, you'd be in the bankruptcy court. So for arising in, arising under, and related to, to have meaning as limitations on jurisdiction, it must mean that in a context like this, you have to be able to say those state court actions, they're related to this thing that's happening in the bankruptcy court. That's how, what I understand their pitch to be, and that's the pitch I would like you to speak to. Not the assertion that they, they're saying we have to have subject matter jurisdiction over Montana. I think your, your honor, I think the point is, whether or not you need independent subject matter jurisdiction over those claims depends on what the bankruptcy court is being asked to do with those claims. What adjudicatory authority? In combustion engineering, the bankruptcy court was being asked to suck those claims into the bankruptcy. Those claims would no longer exist in state court. They would no longer be subject to the adjudicatory authority of the state court. They would now be within the bankruptcy. Whenever the bankruptcy court sucks something in, or whether it's removed to the bankruptcy court, and it no longer sits in the state court, then you need to be able to exercise subject matter jurisdiction. You need to see if that action satisfies, comes within the parameters of 1334. Our point here, and this is what distinguishes it from combustion engineering, is that as when all you are doing as the bankruptcy court is saying stop, halt, you are not thereby sucking it into the bankruptcy court. You are not exercising adjudicatory authority. If that were deemed, if simply saying stop, halting your track state court action, if that were deemed to require a, the exercise of adjudicate, the subject matter jurisdiction, then your decision in prudential would be wrongly decided, which says that you do not need to exercise federal subject matter jurisdiction over a state court action to enjoin it. Why would we say stop or halt when the Montana actions will have no impact on the debtor's estate? Well, that now is the merits, Your Honor. And that's what we, we would like to. That's related to jurisdiction, isn't it? No, but, but Your Honor. Without a further adjudication. Right. And our point is, Your Honor, you do not need to reach the question of related to jurisdiction or whether the Montana action independently would satisfy federal subject matter jurisdiction is not the issue. The related to inquiry. I'm not saying that that is the issue. Then I'm sorry, I misunderstood you, Your Honor. Why should we stay anything if it won't have an impact on the, there'd be no impact on the debtor's estate? Well, Your Honor, the question of the impact. We're back to the moon again. If it had no impact on the debtor's estate, then a 105 injunction would not be justified on the merits. The bankruptcy court in this case did not address that issue. The bankruptcy court in this case limited herself. I'm sorry, I want to be responsive to you. You're saying the bankruptcy court has the, has the jurisdiction to entertain the application for a 105A injunction, but if you follow my thinking, may not have the jurisdiction to grant the relief. Jurisdiction is a dangerous word, Your Honor. I think there, I mean, does not have the power. She doesn't, she doesn't need to have separate subject matter jurisdiction. They're going right back into subject matter. Well, no, no, but she doesn't need it. That's the point. She, this is the point. I mean, the irony is, is that Mr. Cohn and I stood here five years ago. We briefed Girard purely as a related to question, because that's the way Judge Wolin had decided in the district court. This court, sua sponte, asked the parties to submit supplemental briefs on whether this was a jurisdictional issue at all. And I must say, I felt somewhat chagrined because it, I totally had missed that point, that it's not a jurisdictional issue. It's an issue that goes to 105 on the merits. Judge Rendell totally understood that. That was her insight in the case. And if you go back and look at that, we filed all these supplemental pleadings to say it is not a, you don't need to have a separate source of federal subject matter jurisdiction over the Montana action. Judge Fuentes was on that panel. Judge Fuentes was simultaneously on combustion engineering. There's no tension at all because the adjudicatory authority that was requested under 105 required the exercise of subject matter jurisdiction because he was, they were being asked to exercise adjudicatory authority. Doesn't this, doesn't this really get back to what you're saying is if you have an adversary action, you've got a bankruptcy, you have an adversary action, you're always allowed to go in to ask for relief. You may not get it. There is subject matter jurisdiction. Isn't that what you're saying? Essentially, Your Honor, with the asterisk, I think this goes to the point that Judge Jordan was getting to before, which is if you are asking for the court to exercise adjudicatory authority, if you were saying not simply stopping your trial. With that asterisk. We're not asking you to decide the case. Right. You're basically saying if there's an adversary proceeding, the debtor and others, as it's you and Montana, are always entitled to go in. There's jurisdiction to go in, but you then have to make out whether or not you have the ability to stop the action on the merits. Isn't that what you're asking us to do? That's correct. To give you a chance to go in and have the door opened up and go into court. That is precisely right, Your Honor. Yes, sir. Any further questions? Thank you very much. We'll take the case under advisement.